**TENNESSEE DEPARTMENT OF HUMAN SERVICES, Assignee of Yvonne Coleman, Plaintiff-Appellee,**

v.

**J.B. BARBEE, Defendant-Appellant.**

Supreme Court of Tennessee, Western Section, at Jackson.

May 6, 1985.

Harvey M. Yaffe, Harry A. Simmons, Jr., Memphis, for defendant-appellant.

Dianne Stamey, Asst. Atty. Gen., Nashville, Harold Horne, Memphis, for plaintiff-appellee.

BROCK, Justice.

This is a paternity action. The focus of the litigation is Yvonne Coleman's son, Cedric Jerome Coleman, who was born on February 19, 1970. On October 27, 1977, the Tennessee Department of Human Services, as an assignee of Yvonne Coleman, filed a petition to establish paternity against J.B. Barbee. This case was subsequently transferred to the Circuit Court for Shelby County, Tennessee.

On October 26, 1979, in open court the case was set for trial on January 23, 1980. At that time no answer had been filed on behalf of the defendant. There is no evidence in the record indicating that plaintiff's counsel attempted to communicate the trial date to the defendant at that time. On November 26, 1979, an answer was filed on behalf of J.B. Barbee by Harvey Yaffe of the Memphis Bar which specifically denied that Mr. Barbee was the father of Cedric Jerome Coleman. On December 11, 1980, the plaintiff's attorney, Harold Horne, wrote a letter to Mr. Yaffe informing him that he had set a motion for summary judgment for hearing on January 11, 1980. Horne wrote a second letter to Yaffe that same day which stated that the case was set for trial on January 23, 1980. With that letter Horne enclosed a set of interrogatories and a set of requests for admission which he had previously attempted to serve upon the defendant. On January 11, 1980, defense counsel failed to appear at the hearing on plaintiff's motion for summary judgment. Mr. Horne rescheduled the hearing on the motion for the morning of trial, January 23, 1980. There is no evidence in the record indicating that Mr. Horne attempted to contact Mr. Yaffe's office: (1) to ascertain why he failed to appear at the January 11, 1980, hearing, (2) to ascertain if Yaffe had received the December 11, 1979, letters and was aware of the dates set for the motion for summary judgment and for trial or (3) to inform him of the rescheduling of the hearing on the motion for summary judgment. On January 23, 1980, neither the defendant, J.B. Barbee, nor his attorney appeared for the trial and the court entered

a default judgment decreeing that the defendant was the father of Cedric Jerome Coleman.

On May 2, 1980, a "Motion to Set Aside the Judgment" was filed on behalf of the defendant. The motion states that neither defense counsel nor the defendant received any notice from the clerk's office that the case had been set for trial on January 23, 1980, and that defense counsel was out of the country on the date of trial. In support of this motion, the affidavit of the defendant, J.B. Barbee, was filed with the court which states that he was not the father of Cedric Jerome Coleman; that he had no notice of the January 23, 1980, trial and that his attorney was out of the country at the time the default judgment was taken. The plaintiff vehemently opposed the motion and in support of its opposition, filed the affidavit of Harold Horne, counsel for the plaintiff, with the trial court which explains how the case was set for trial, details the December 11, 1979, correspondence to Mr. Yaffe and the actions which were taken at the January 11 and January 23, 1980, hearings. At this time, the plaintiff did *not* claim that setting aside the default judgment would result in any prejudice to it.

On May 9, 1980, the trial court heard and granted the motion to set aside the default judgment. The order which sets aside the default judgment does not state the trial court's rationale in so ruling. The plaintiff filed an "Application for an Extraordinary Appeal" in regard to the action taken by the trial court which was denied by the Court of Appeals on June 24, 1980. This Court denied the plaintiff's "Application for an Extraordinary Appeal" on November 7, 1980.

On September 24, 1981, a jury trial was held which resulted in a verdict for the defendant. After the trial court overruled its motion for a new trial, the plaintiff appealed, assigning various errors on the part of the trial court in regard to the September 24, 1981, trial. The plaintiff also appealed the trial court's action in setting aside the January 23, 1980, default judgment.

The Court of Appeals pretermitted the issues which pertain to the September 24, 1981, trial, holding that the trial court erred in setting aside the default judgment:

"Since the defendant failed to show any facts and circumstances to justify the extraordinary relief of setting aside a final judgment, it follows that the judgment of the trial court should be reversed. The jury verdict is to be vacated and the default judgment in favor of the plaintiff is to be reinstated."

In support of his application for permission to appeal to this Court, the defendant filed the affidavit of defense counsel which indicates that he was unaware that his case was set for trial when he left this country in December, 1979, that he was out of the country on January 23, 1980, and that the first time he learned of the default judgment was on May 2, 1980, when J.B. Barbee informed him that he had received a bill of costs in this litigation. This caused Yaffe to check his files which contained the previously mentioned correspondence from Horne and to contact the Clerk's office which verified that a default judgment had been entered. Unfortunately, Mr. Yaffe's affidavit has not been made a part of the record under Rule 24(e) of the Tennessee Rules of Appellate Procedure. Although defense counsel contends that he communicated the information contained in his affidavit to the trial court at the May 9, 1980, hearing on the motion to set aside the default judgment, his affidavit was not filed with and made a part of the record by the trial court.

Did the trial court abuse its discretion when it set aside the January 23, 1980, default judgment?

■ Rule 55.02 of the Tennessee Rules of Civil Procedure provides that "[f]or good cause shown the court may set aside a judgment by default in accordance with Rule 60.02." Rule 60.02 provides, in pertinent part, that:

"On motion and upon such terms as are just, the court may relieve a party or his

legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (3) a judgment is void; (4) the judgment has been set aside, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or (5) any other reason justifying a relief from the operation of the judgment. A motion shall be made within a reasonable time, and for reasons (1) and (2) not more than one year after the judgment, order or proceeding was entered or taken."

Under Rule 60 "the burden is on the movant to set forth, in a motion or petition and supporting affidavits, facts explaining why the movant was justified in failing to avoid the mistake, inadvertence, surprise or neglect." *Tennessee State Bank v. Lay,* Tenn.App., 609 S.W.2d 525 (1980). The setting aside of a default judgment lies within the sound discretion of the trial court. *Keck v. Nationwide Systems, Inc.,* Tenn.App., 499 S.W.2d 266 (1973).

Federal courts have made a sharp distinction, in the application of Rule 60, between final judgments and default judgments.

"The cases calling for great liberality in granting Rule 60(b) motions, for the most part, have involved default judgments. There is much more reason for liberality in reopening a judgment when the merits of the case never have been considered than there is when the judgment comes after a full trial on the merits. On the other hand, the leading cases speaking of a requirement of exceptional or extraordinary circumstances have been cases of motions under Rule 60(b)(6). That subdivision of the rule does require a very special showing by the moving party and it does not assist sound analysis to repeat those phrases in cases brought pursuant to the other portions of Rule 60(b), under which a less

demanding standard applies." Wright & Miller, FEDERAL PRACTICE & PROCEDURE, § 2857, p. 160.

In applying Rule 60(b), Federal Rules of Civil Procedure, to default judgments, the courts have given it a liberal construction. "Since the interests of justice are best served by a trial on the merits, only after a careful study of all relevant considerations should courts refuse to open default judgments." *Securities and Exchange Commission v. Seaboard Corp.,* 666 F.2d 414 (9th Cir.1982).

"In applying Rule 60(b)(1) in the context of default judgments, courts have gone beyond the bare wording of the rule and established certain criteria which should be considered in deciding whether the designated standards have been satisfied. These criteria ... include (1) whether the default was willful; (2) whether defendant has a meritorious defense; and (3) the level of prejudice that may occur to the non-defaulting party if relief is granted." *Davis v. Musler,* 713 F.2d 907 at 915 (2nd Cir.1983).

*See also, Thorpe v. Thorpe,* 364 F.2d 692 (D.C.Cir.1966); *Wilson v. Moore and Associates, Inc.,* 564 F.2d 366 (9th Cir.1977); *United States v. $55,518.05 in U.S. Currency,* 728 F.2d 192 (3d Cir.1984).

In reversing the trial court and reinstating the default judgment in this cause, the Court of Appeals relied upon *Hopkins v. Hopkins,* Tenn., 572 S.W.2d 639 (1978). The order that was the subject of controversy in the *Hopkins* case was not entered by default. In *Hopkins,* Mary Hopkins sued her husband for an absolute divorce. A default judgment was entered against the husband. A hearing was held on March 9, 1976, which resulted in a final decree being entered which granted the plaintiff an absolute divorce and which awarded $350.00 in attorney fees to the plaintiff. More than thirty days after the final decree was entered, the plaintiff filed a petition to amend that decree, alleging that at the hearing the court had awarded to her as alimony the defendant's interest in real property in Memphis, Tennessee,

and a 1972 Ford station wagon. The trial court which entered the final decree declined to grant the plaintiff relief under Rule 60. This Court determined that the trial court, which was in the best position to determine if the final decree reflected its findings at the March 9, 1976, hearing, did not abuse its discretion in denying relief to the plaintiff. The plaintiff failed to offer any proof which justified "invocation of the extraordinary relief of setting aside a final judgment." 572 S.W.2d at 640.

 As has been noted above, courts often apply a different standard when faced with a Rule 60 motion in regard to a default judgment. Unlike the *Hopkins* case in which relief from a final judgment after a hearing was deemed to be extraordinary under Rule 60, Rule 60 is construed with liberality to afford relief from a default judgment. Another crucial distinction is that the trial court in *Hopkins* declined to afford the plaintiff relief under Rule 60. In the case at bar, the trial court exercised its discretion by determining that the default judgment should be vacated and that a hearing on the merits should be held. Obviously, the trial court is in the best position to assess the various factors that should be considered in determining whether a default judgment should be vacated and its finding is entitled to great weight. Moreover, unlike the *Hopkins* case, the record in this cause reflects why the defendant failed to appear at the January 23, 1980, trial. This case was set for trial in open court before defense counsel entered an appearance for the defendant. No order setting the case for trial was entered. After an answer was filed, the clerk's office failed to notify defense counsel that this case has been set for trial.

Our review of the record indicates that there was sufficient evidence before the trial court to support his decision to vacate the default judgment and to try this case on its merits. Accordingly, we find that the trial court did not abuse its discretion in vacating the default judgment and permitting this cause to be tried on its merits.

In *Campbell v. Archer*, Tenn., 555 S.W.2d 110 (1977), this Court, in dealing with a somewhat analogous fact situation, determined that a trial judge abused his discretion when he refused to set aside a judgment. While the *Campbell* case involved a motion for a new trial under Rule 59 of the Tennessee Rules of Civil Procedure, the analysis employed by the Court in that case is equally applicable to the facts involved in the case at bar. In *Campbell*, attorney Alfred Taylor was retained to represent the defendants and he filed an answer on their behalf. After the case had been continued on two occasions, in mid-February, 1975, the trial court reset the cases for trial on March 11, 1975. The clerk prepared a notice of the trial date and sent it to Taylor in mid-February, 1975. Although it was not denied that Taylor's office received notice of the trial date, Taylor denied that he was personally aware of the trial date until he was informed that the trial had begun at mid-morning on March 11, 1975.

Four days prior to the March 11, 1975, trial date, Taylor and the defendants decided to go their separate ways. The defendants retained another attorney to represent them who promptly obtained the pertinent files from Taylor. The newly hired attorney was never advised by Taylor or anyone else that the case was set for trial on March 11, 1975.

On March 11, 1975, the defendants and their attorney failed to appear for trial. The court directed that Mr. Taylor be contacted. Mr. Taylor informed the court that he no longer represented the defendants and would not appear for trial on behalf of the defendants. The trial court determined that it should proceed with the trial. Taylor telephoned the defendants' newly retained attorney and informed him of the ongoing trial. Shortly thereafter while the trial was in progress, the newly retained attorney and one of the defendants appeared in court. The court refused to grant the defense counsel permission to approach the bench during the proceedings. After the presentation of the plaintiff's case, the court instructed the jury which

returned judgments in the amounts of $6,000.00 in one case and $4,000.00 in the other case against the defendants. The defendants filed a motion for a new trial under Rule 59, asserting that they had a meritorious defense to the plaintiff's claims, that they had no notice of the March 11, 1975, trial date and that their failure to appear was, at most, "excusable neglect." The trial court refused to grant the defendant's motion to award them a new trial.

We held that the trial court abused its discretion in denying the motion, holding that the defendants had shown "excusable neglect." In so ruling, the court emphasized the facts that the defendants were not personally at fault and that no showing had been made that the plaintiffs would be prejudiced if the judgments were set aside and a new trial was awarded.

■ In the case at bar, despite the plaintiff's protestations to the contrary, the plaintiff was not prejudiced by the trial court's decision to vacate the default judgment and to try this case on its merits. The plaintiff claims that it was prejudiced because "it could no longer produce two witnesses and had lost letters from the defendant's mother acknowledging the child was her grandson." The first time that the plaintiff claimed that the trial court's action in setting aside the default resulted in such prejudice was at the September 24, 1981, trial. When the defendant's motion to set aside the judgment was heard on May 9, 1980, the plaintiff did not claim that it would suffer any prejudice if the default judgment was vacated. At that hearing plaintiff contended that the trial court had no jurisdiction to hear the motion and that the defendant had failed to show good cause to set aside the default judgment. After the trial court set aside the default judgment, the plaintiff, not the defendant, delayed progress in the litigation for over six months by attempting to appeal a non-final order to the Court of Appeals and this Court. There has been no showing that the plaintiff suffered any prejudice when the trial court set aside the default on May 9, 1980.

■ The record demonstrates that the defendant had a meritorious defense to the plaintiff's claims. An answer had been filed in this litigation which specifically denied that J.B. Barbee was the father of Cedric Jerome Coleman. Further, J.B. Barbee's affidavit was filed with the Court in conjunction with the motion to set aside the default judgment which denied that he was the father of this child.

■ Moreover, there is no proof in the record that the defendant's default was culpable or willful. Indeed, the record shows that this case was set for trial in open court before defense counsel entered an appearance, that no order was entered specifying the trial date, that after an answer was filed the clerk never notified defense counsel of the trial date and that the defendant was unaware of the January 23, 1980, trial date. As in the *Campbell* case, *supra*, the defendant, J.B. Barbee, was personally free of fault. If there is any fault in regard to the failure to appear for the January 23, 1980, trial, that fault lies in the manner in which the case was set for trial, the clerk's failure to notify defense counsel that the case was set and in defense counsel's office which failed to notice that the trial was set when plaintiff's counsel informed it of this fact in a letter dated December 11, 1979. Such lapses have been held to be excusable neglect by Tennessee courts. *See, Campbell v. Archer, supra; Jerkins v. McKinney*, Tenn., 533 S.W.2d 275 (1976); *Tate v. County of Monroe*, Tenn.App., 578 S.W.2d 642 (1979).

The judgment of the Court of Appeals is reversed and the trial court's decision to vacate the default judgment and to try this case on its merits is affirmed. This cause is remanded to the Court of Appeals so that it can consider the pretermitted grounds which the plaintiff has asserted in this appeal regarding the September 24, 1981, jury trial. Costs are taxed against plaintiff-appellee and surety.

COOPER, C.J., and FONES, HARBISON and DROWOTA, JJ., concur.