IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 2, 2011 Session

**STATE OF FRANKLIN BANK v. J. ALAN RIGGS, ET AL.**

**Appeal from the Circuit Court for Washington County**
**No. 28026    Thomas J. Seeley, Jr., Judge**

---

**No. E2010-01505-COA-R3-CV-FILED-OCTOBER 27, 2011**

---

In this case, the trial court entered a default judgment against J. Alan Riggs ("Husband") and Deborah D. Riggs ("Wife") and against Husband and Preston Park Development, LLC ("Preston Park"). Husband, Wife, and Preston Park (collectively "the Defendants") filed a motion for a new trial or to set aside the default judgment. The trial court granted the motion, in part, holding that Wife was not liable for one of the counts in the judgment entered against her. The trial court upheld the entirety of the other counts as they related to each of the Defendants. The Defendants appeal. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., and D. MICHAEL SWINEY, JJ., joined.

Arthur M. Fowler, III, Johnson City, Tennessee, for the appellants, J. Alan Riggs, Deborah D. Riggs, and Preston Park Development, LLC.

Edward T. Brading, Johnson City, Tennessee, for the appellee, State of Franklin Bank.

**OPINION**

**I. BACKGROUND**

The circumstances out of which this appeal arises are largely undisputed. Husband and Wife executed a $475,000 promissory note to the State of Franklin Bank (the "Bank"), and as security for the loan, Husband and Wife executed a deed of trust and security

agreement for two vacant lots located on the John B. Dennis Bypass ("Dennis Property"). Two years later, Husband and Wife increased the promissory note to $525,000 and extended the maturity date of the indebtedness. The maturity date was subsequently extended several additional times before the Bank foreclosed on the Dennis Property following Husband and Wife's failure to make payments and the resulting default of the promissory note. The Bank held a foreclosure sale for the Dennis Property and purchased the property for $400,000 as the highest bidder. The deficiency amount owing on the debt following the foreclosure sale was $137,918.03, including interest, late fees, legal fees, and expenses.

Preston Park executed a $1,200,000 construction note to the Bank, with Husband as the co-signer. As security for the loan, Preston Park and Husband executed a deed of trust and security agreement for 30.24 acres of land known as the Preston Park/Orebank Property. The maturity date was extended several times before the Bank foreclosed on the Preston/Orebank Property following Preston Park's failure to pay the debt at the maturity date. The Bank held a foreclosure sale and subsequently purchased the Preston/Orebank Property for $600,000 as the highest bidder. The deficiency amount owing on the debt following the foreclosure sale was $645,616.27, including interest, legal fees, and expenses.

Husband and Wife executed a $50,000 unsecured promissory note to the Bank. The promissory note was increased and subsequently extended several times before Husband and Wife ceased payment on the promissory note. The amount owing on the debt was $20,117.74, including interest and other fees.

The Bank initiated an action by serving the Defendants with a three-count complaint, alleging that the Defendants were liable for the amount owing on the unsecured debt and the amount remaining on the secured debts following the foreclosure sale. Count 1 and 2 of the complaint related to the debt secured by the Dennis Property and the Preston Park/Orebank Property, while Count 3 related to the unsecured promissory note. After receiving proper service of process, the Defendants failed to answer the Bank's 3-count complaint within the 30-day period of Rule 12.01 of the Tennessee Rules of Civil Procedure. Shortly after the deadline had passed, the Defendants, through counsel, requested a three-week extension in which to file an answer. The Bank agreed but filed a motion for default judgment and set a hearing date past the three-week extension deadline. The Bank informed the Defendants that they would withdraw the motion if they received an answer to the complaint before the hearing. Prior to the hearing, counsel informed the Bank that he would not be representing the Defendants but requested an additional extension of time on the Defendants' behalf. The Bank refused. Husband then informed the Bank that he had a meeting scheduled with another attorney and requested an extension. The Bank refused his request. Still having received no answer to their complaint, the Bank attended the hearing and moved for judgment by default for the Defendants' failure to plead or defend against the Bank's

complaint. Husband appeared at the hearing and argued against the Bank's motion. The trial court entered a judgment by default, awarding the Bank damages for the amount requested in each count of the complaint.

Shortly thereafter, the Defendants filed a motion for new trial or to set aside the default judgment, accompanied by a supporting affidavit and documentation. The Defendants asserted that their neglect in failing to respond to the complaint was not willful. The Defendants claimed that they had meritorious defenses to each count in the complaint and that the Bank would not be prejudiced if the judgment were set aside. Relative to their defenses, the Defendants asserted that the property in Count 1 had appraised for much higher than the foreclosure sale price, that they had obtained a buyer for the property in Count 2 shortly before the foreclosure sale that would have paid more than the foreclosure sale price, and that Wife was not liable for the amount sought in Count 3 because she did not sign the subsequent promissory notes evidencing the renewal of the original debt.

The Bank responded with their own supporting affidavit and documentation. The Bank asserted that the Defendants' failure to respond to the complaint was willful. Relative to the defenses, the Bank contended that the defense to Count 1 was inadequate because the Defendants referenced an appraisal that was six years old and that the defense to Count 2 was inadequate because the Defendants relied on a sale that never took place. The Bank insisted that in reaching the price for the properties, they used a current appraisal and offered bids at the mid-range value for each property. The Bank argued that the defense to Count 3 was inadequate because Wife signed the original promissory note that was referenced in each subsequent promissory note and because the amount sought was less than the amount borrowed in the original promissory note. The Bank claimed that they would suffer prejudice if the default judgment were set aside because they had recorded the judgment, creating a lien against property owned by the Defendants. The Bank alleged that the Defendants mortgaged the same property with another bank, creating a second lien. The Bank stated that if the judgment were set aside, they would lose their priority status and any equity in the property that could be applied toward the satisfaction of the default judgment.

Following arguments by counsel, the trial court granted the motion, in part, holding that Wife was not liable for the amount claimed in Count 3 of the complaint. The trial court further held that the Defendants had not met their burden of showing excusable neglect relative to Counts 1 and 2 of the complaint. The court noted that the Defendants were granted an extension of time but filed nothing in response to the complaint. The court found that "[a]lthough the [Defendants'] default was not willful, [they] should have known that a default judgment would result, and thus their neglect [wa]s not excusable." The court additionally found that the Defendants had "not shown that they ha[d] meritorious defenses" and that they did not "overcome the presumption that the foreclosure sale prices" were

commensurate with the value of the properties. The court also held that the Bank would be prejudiced by setting aside the default judgment. This timely appeal followed.

## II. ISSUE

The Defendants' restated sole issue on appeal is whether the trial court erred in denying their motion to set aside the default judgment relative to Counts 1 and 2 of the complaint.

## III. STANDARD OF REVIEW

A trial court's refusal to set aside a default judgment is reviewed for abuse of discretion. *Henson v. Diehl Machines, Inc.*, 674 S.W.2d 307, 310 (Tenn. Ct. App. 1984). Under an abuse of discretion standard, an appellate court is not permitted "to substitute its judgment for that of the trial court." *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998)). As a general principle, an appellate court will find an abuse of discretion and thus reverse a decision only when the trial court has "applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining." *State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997). *See also Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003).

"[C]ourts often apply a different standard when faced with a Rule 60 motion in regard to a default judgment." *Tennessee Dep't. of Human Servs. v. Barbee*, 689 S.W.2d 863, 867 (Tenn. 1985). Rule 60 of the Tennessee Rules of Civil Procedure is "construed with liberality to afford relief from a default judgment." *Id.* "In the interest of justice, the courts have expressed a clear preference for a trial on the merits." *Decker v. Nance*, No. E2005-2248-COA-R3-CV, 2006 WL 1132048, at *2 (Tenn. Ct. App. Apr. 28, 2006). "If there is reasonable doubt as to whether to set aside a default judgment upon proper application, a court should exercise its discretion in favor of granting relief from the judgment." *Id.*

## IV. DISCUSSION

The Defendants contend that the trial court erred in refusing to set aside the judgment when their neglect in failing to answer the complaint was excusable. They claim that as required by statute, they asserted a meritorious defense, namely that the foreclosure sale price of the properties was grossly inadequate. They also allege that the Bank would not suffer prejudice if the default judgment were set aside. The Bank asserts that the Defendants' conduct was not excusable but was willful, that the Defendants did not have a meritorious defense, and that setting aside the default judgment would cause them prejudice.

The controlling procedural rule on the issue before this court provides that "[f]or good cause shown the court may set aside a judgment by default in accordance with Rule 60.02." Tenn. R. Civ. P. R. 55.02. Rule 60.02 specifies, in pertinent part, the grounds upon which a party may be granted relief:

> On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud [], misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1) and (2) not more than one year after the judgment, order or proceeding was entered or taken.

A party seeking relief from a final judgment under Rule 60.02 bears the burden of offering proof of the basis upon which relief is sought. *Henry*, 104 S.W.3d at 482. The movant must "set forth in a motion or petition and supporting affidavits facts explaining why the movant was justified in failing to avoid the mistake, inadvertence, surprise or neglect." *Tennessee State Bank v. Lay*, 609 S.W.2d 525, 527 (Tenn. Ct. App. 1980). Mistake or excusable neglect on the part of the moving party's attorney may constitute grounds for setting aside a default judgment. *Id.* The Tennessee Supreme Court has stated that, except in cases of a void judgment, a defendant must demonstrate a meritorious defense to the plaintiff's claim in addition to any affirmative showing of mistake, inadvertence, or excusable neglect as the basis of default. *Patterson v. Rockwell Int'l*, 665 S.W.2d 96, 100 (Tenn. 1984). In a motion to set aside a default judgment, a merely conclusory statement, such as "[t]he respondent . . . believes itself to have a good and valid defense to this action," is insufficient and "does not constitute the assertion of a meritorious defense to the plaintiff's claim." *Id.* at 101.

In determining whether a default judgment should be set aside, Tennessee courts also must consider, in addition to the justifications provided under Rule 60.02, the following three criteria: "(1) whether the default was willful; (2) whether defendant has a meritorious defense; and (3) the level of prejudice that may occur to the non-defaulting party if relief is granted." *Barbee*, 689 S.W.2d at 866 (quoting *Davis v. Musler*, 713 F.2d 907, 915 (2d Cir. 1983)); *see, e.g.*, *Henry*, 104 S.W.3d at 481; *Pryor v. Rivergate Meadows Apartment Assocs. Ltd. P'ship*, 338 S.W.3d 882, 886 (Tenn. Ct. App. 2009). The trial court's findings based on a consideration of these factors are accorded great weight. *See Barbee*, 689 S.W.2d at 867 ("[T]he trial court is in the best position to assess the various factors that should be

considered in determining whether a default judgment should be vacated."). While Rule 60.02 is construed with liberality, the defaulting party must prove entitlement to relief pursuant to Rule 60.02. *Henry*, 104 S.W.3d at 481-82 (citing *Federated Ins. Co. v. Lethcoe*, 18 S.W.3d 621, 624-25 (Tenn. 2000)).

Relative to the Defendants' willfulness, we acknowledge that an absence of willfulness does not necessarily mean that the neglect was excusable because willfulness has not replaced the Rule 60.02(1) reason of excusable neglect. *Pryor*, 338 S.W.3d at 886. "A recent Tennessee decision explained the relationship as follows: '[t]his approach has been to find that negligence, a form of neglect, may be excusable and to employ wilfulness as a critical factor in distinguishing neglect that is excusable from that which is not.'" *Id.* (quoting *World Relief Corp. of Nat'l Ass'n of Evangelicals v. Messay*, No. M2005-01533-COA-R3-CV, 2007 WL 2198199, at *7, n.9 (Tenn. Ct. App. July 26, 2009)). The Bank asserts that the Defendants willfully failed to respond to the complaint. The court found that while the Defendants' neglect was not willful, it was not excusable.

We agree with the trial court that the Defendants' neglect was not willful. Husband appeared at the hearing, informed the court that he had scheduled a meeting with an attorney, and requested another extension. Husband explained that he did not want to proceed with his original attorney because he did not agree with the way in which that attorney wanted to answer the complaint. While the Defendants were negligent in failing to answer the complaint in a timely fashion and in failing to timely secure the services of an attorney, their behavior cannot be characterized as a willful decision to ignore the complaint and allow a default judgment to be entered against them. *McBride v. Webb*, No. M2006-01631-COA-R3-CV, 2007 WL 2790681, at *3 (Tenn. Ct. App. Sept. 25, 2007) (providing that willfulness includes a strategic decision and conduct that is more than mere negligence or carelessness but is egregious and not satisfactorily explained). Indeed, the Defendants consistently asked for extensions of time in which to file an answer and kept the Bank informed of their progress. However, their neglect was not excusable because they were aware that they had not received a second extension and that their continued failure to answer the complaint would result in the entry of a default judgment. The Defendants elected to hire another attorney before answering the complaint when they simply could have allowed the original attorney to answer the complaint and amended their answer at a later date. *See* Tenn. R. Civ. P. R. 15.01. Accordingly, the Defendants failed to carry their burden of proving entitlement to relief under Rule 60.02 of the Tennessee Rules of Civil Procedure. The trial court would have been justified in denying relief without further consideration of the Defendants' arguments. *See Pache Industries, LLC v. Wallace Hardware Co., Inc.*, No. E2003-01483-COA-R3-CV, 2003 WL 22668854, at *5 (Tenn. Ct. App. Nov. 12, 2003).

Because the trial court further held that the Defendants had failed to assert a meritorious defense and that the Bank would suffer prejudice if the default judgment were set aside, we will review those determinations. Relative to the trial court's determination that the Defendants' failed to allege a meritorious defense, the Defendants insist that the trial court misapplied the law. The Defendants contend that they were only required to *assert* a meritorious defense but that the trial court denied relief after finding that they could not *prove* their defense. This argument is without merit. The court found that the Defendants had "not shown that they ha[d] meritorious defenses" and that they did not "overcome the presumption that the foreclosure sale prices" were commensurate with the value of the properties. The Defendants argue that the court's use of the word "shown" means that the court denied the motion because the Defendants did not prove their defense. We do not believe the court's use of that word evidences this intent. The Defendants are correct in their assertion that they were not required to prove their defense, but they were required to assert a meritorious defense, namely a defense that at least had the potential of succeeding at trial. We, like the trial court, believe the defense was not meritorious because the Defendants did not submit evidence that *could* have overcome the presumption that the foreclosure price was commensurate with the fair market value of the properties.

When a foreclosure sale of real property secured by a deed of trust fails to satisfy an indebtedness, the creditor may recover a "deficiency judgment in an amount sufficient to satisfy fully the indebtedness." Tenn. Code Ann. § 35-5-118(a). Absent fraud, collusion, misconduct, or irregularity in the foreclosure sale, "the deficiency judgment shall be for the total amount of indebtedness prior to the sale plus the costs of the foreclosure and sale, less the fair market value of the property at the time of the sale." Tenn. Code Ann. § 35-5-118(b). In such cases, "[t]he creditor shall be entitled to a rebuttable prima facie presumption that the sale price of the property is equal to the fair market value of the property at the time of the sale." Tenn. Code Ann. § 35-5-118(b); *see Duke v. Daniels*, 660 S.W.2d 793, 795 (Tenn. Ct. App. 1983). If a defendant raises gross inadequacy of the foreclosure price as a defense to the deficiency claim, the defendant "must prove by a preponderance of the evidence that the property sold for an amount materially less than the fair market value of property at the time of the foreclosure sale." Tenn. Code Ann. § 35-5-118(c); *see also Lost Mountain Dev. Co. v. King*, No. M2004-02663-COA-R3-CV, 2006 WL 3740791, at *8 (Tenn. Ct. App. Dec. 19, 2006) ("[T]he issue in deficiency actions is the fair market value of the property at the time it was sold.").

The Defendants did not allege at the hearing or on appeal that the foreclosure sale itself was fraudulently conducted or irregular in any manner. In asserting their defense to Count 1, the Defendants referenced a six-year-old appraisal that provided a $2,300,000 value for the property. In response, the Bank submitted an affidavit and documentation showing that they offered a bid in the mid-range value of a current appraisal for that property. The

Defendants contend that the Bank's appraisal was not completed until after the foreclosure sale and could not have been used to determine the fair market value at the time of the foreclosure. The Bank's affidavit provided that their appraiser, David W. Harris, provided a range of values for the properties *shortly before* the foreclosure sale and that *after the foreclosure sale*, Mr. Harris provided a detailed report evidencing his appraisal of the properties. Thus, the Defendants' argument that the Bank did not rely on a current appraisal is rebutted by the Bank's supporting affidavit. Additionally, the Bank's appraisal provided that the land value had "declined slightly" since the last appraisal, that there was "almost no demand" for development of portions of the property, and that the data indicated a "worsening economic climate" for the area. Having reviewed these documents, we do not believe that the Defendants asserted a meritorious defense to the Bank's claim in Count 1.

In asserting their defense to Count 2, the Defendants submitted emails, a letter, and an affidavit referencing a pending sale of the Preston Park/Orebank Property that they used to secure a $1,200,000 construction note. The Defendants contended that their willing buyer was planning to purchase the property for $1,243,000. It is important to note that the buyer did not purchase the property prior to the foreclosure sale or at the foreclosure sale. The current appraisal valued the property between $500,000 and $700,000, and the Bank purchased the property for $600,000. Having reviewed the Defendants' documents and the current appraisal of the property, we do not believe that the Defendants asserted a meritorious defense to the Bank's claim in Count 2.

Relative to prejudice, the Bank states that they used the default judgment to become the first lien holder against property owned by the Defendants, while another bank became the second lien holder against the same property. The Bank insists that if the judgment were set aside, the other bank would attain the priority lien against the property. The Defendants respond that if this court were to affirm the trial court's ruling on prejudice, "then the courts would never be able to vacate a judgment because it would always remove the judgment lien." While that may be the case, the issue here is the loss of the Bank's priority lien over the other bank, not the loss of the judgment lien itself. The Bank would be prejudiced if the default judgment were set aside because the other bank would attain the priority lien while the case proceeded to trial. Having concluded that the Defendants' neglect was not excusable, that the Defendants failed to present a meritorious defense, and that the Bank would suffer prejudice if the default judgment were set aside, we conclude that the trial court did not abuse its discretion in refusing to set aside the default judgment. Accordingly, we affirm the judgment of the trial court.

## V. CONCLUSION

The judgment of the trial court is affirmed, and the case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellants, J. Alan Riggs, Deborah D. Riggs, and Preston Park Development, LLC.

_____
JOHN W. McCLARTY, JUDGE